IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| HOME INSTEAD, INC., a Nebraska Corp.;<br><br>        Plaintiff,<br><br>    vs.<br><br>DAVID FLORANCE, MICHELLE FLORANCE,  FRIEND OF A FRIEND, INC.,<br><br>        Defendants. | **8:12CV264**<br><br>**MEMORANDUM AND ORDER** |

Plaintiff Home Instead, Inc. (Home Instead) filed an extensive motion to compel with supporting evidence and requested an expedited review  (Filing No. 97).  The motion requests:

1)  A statement which:

- identifies the documents relevant to this litigation which have been lost, distributed to others, or destroyed, and an explanation of how that occurred;

- explains whether a litigation hold was implemented for this case and the terms and manner of implementation; and

- describes, per interrogatory and document request, the efforts made to provide a full and complete response to Plaintiff's discovery.

2)  Production of documents in a manner consistent with the Federal Rules and the parties' agreement as incorporated into this court's case progression order.

3)  Answers to Interrogatories 5 and 8 served on Friend, Interrogatory 6 served on Michelle Florance, and Interrogatory 7 served on David Florance.

4)  Responses to Requests for Production 29, 30, 32-33,36-38, 51-52, and 66.

5)  An order overruling the defendants' objection to the term "Unauthorized Franchised Business" as used in Plaintiff's discovery requests.

To facilitate a prompt ruling, the court conferred with counsel on October 15, 2013, and encouraged them to work diligently to resolve the issues raised.

On October 21, 2013, counsel for the plaintiff reported:

> On October 17, 2013, counsel for the parties met to discuss this matter but did not resolve any of the issues in Home Instead, Inc.'s expedited motion to compel.  On October 21, 2013, Counsel for Defendants, Mark A. Williams, informed counsel for Home Instead, Inc. that he has been unable to discuss the issues in Home Instead's expedited motion to compel with his clients since the October 15, 2013 status conference.  As such, other than the parties' stipulation governing production of Defendants' QuickBooks accounting data, the parties have been unable to resolve any issues in Home Instead, Inc.'s expedited motion to compel.

(Filing No. 108).  Therefore, other than the parties' dispute over producing QuickBooks data,[1] all matters within the motion to compel are currently before the undersigned magistrate judge for a decision.

For the reasons discussed herein, the motion to compel will be granted..

## THE PLEADINGS

Home Instead provides "non-medical companionship and domestic care services for senior citizens" through a network of franchises.  Beginning in 1997, Friend of a Friend, Inc. ("Friend") became a franchisee within the Home Instead network.  The most current Home Instead/Friend franchise agreements (Renewal Franchise Agreement Nos. 176 and 285) were scheduled to expire on August 3, 2012.  (Filing No. 4, ¶¶ 27-30).

Home Instead's complaint alleges Friend elected not to renew its Home Instead franchise, and then violated the non-competition terms of the franchise agreements by

---

[1]Home Instead's motion seeks possession and access to a portable company backup of Defendants' QuickBooks file.  (Filing No. 97, ¶ E).  After the motion was filed, the parties resolved this dispute.  Pursuant to their stipulation, Home Instead "withdraws its request for production of QuickBooks accounting data."  (Filing No. 107, at CM/ECF p. 2).

conducting a business in direct competition with Home Instead.  Home Instead further claims Friend misappropriated Home Instead's trade secrets and used its License Marks to operate this competing business.  (Filing No. 4, ¶¶ 40, 56, 59, ).  Home Instead seeks monetary and injunctive relief.

Friend denies Home Instead's allegations and has counterclaimed.  Friend alleges Home Instead violated the franchise agreement by 1) failing to timely renew the agreement; 2) diverting business from the defendants; 3) permitting other franchises to operate in Friend's territory; 4) unilaterally terminating Friend's access and ability to use the Home Instead website and email resources without notice; and 5) refusing to permit Friend's access to training resources.  Friend seeks damages and injunctive relief.

## MOTION TO COMPEL

1)    <u>Discovery statement</u>.

Home Instead moves for an order requiring the defendants to identify all documents which were responsive to the plaintiff's discovery and in the defendants' possession, custody, or control as of August 1, 2012, but which were not produced because the defendants destroyed, deleted, sold, shred, or otherwise discarded them.  As to all such documents, Home Instead requests an explanation of what happened to the documents.   The defendants' responsive brief does not respond to this portion of Plaintiff's motion to compel.

David and Michelle Florance testified that after August 1, 2012, some of the information and materials responsive to Plaintiff's discovery were sold, (Filing No. 98-7, at CM/ECF p. 3 at 42:14-44:12; Filing No. 98-8, at CM/ECF pp. 5-6 at 79:23-82:17); shredded, (Filing No. 98-7, at CM/ECF pp. 11-12 at 81:25-82:25, 84:22-85:25); donated, (Filing No. 98:7, at CM/ECF p. 21, 122:22-124:4; Filing No. 98-8, at CM/ECF p. 24,

168:1-25-169:25); and discarded, (Filing No. 98-7, at CM/ECF pp. 19, 24, 32 at 110:17-111:3, 133:6-134:10, 170:8-18; Filing No. 98-8, at CM/ECF pp. 11, 35 at 107:108:10, 209:20-210:4), including materials Home Instead claims Friend was required to return after the parties' franchise agreement expired.  (Filing No. 98-8, at CM/ECF p. 38 at 213:6-214:8).   Home Instead is entitled to a detailed listing of these items and a description of how and when Friend lost control or possession of information relevant to this case, responsive to Plaintiff's discovery, and/or listed as documents to be returned to Home Instead under the terms of the expired franchise agreement.

As part of that defendants' explanation of its discovery efforts in this case, Home Instead requests an order requiring the defendants to further search for responsive discovery, produce any additional discovery located, and explain by written affidavit, as to each separate document request, the efforts made to locate responsive documents. While typically the court would not require such a response to discovery, upon review the depositions of record, the court finds such an order is warranted in this case.  During his testimony, David Florance characterized the defendants' search as "broad." But David Florance also testified, and Michelle Florance's testimony confirms, that the defendants did not thoroughly search email accounts for responsive documents ((Filing No. 98-7, at CM/ECF pp. 9, 13-14, at 74:15-24, 92:24-93:2; Filing No. 98-8, at CM/ECF p. 17-18, 35 at 140:25-141:20, 209:20-210:4).   The defendants did not review client paper files, (Filing No. 98-7, at CM/ECF p. 14 at 95:21-96:6); employee files, (Filing No. 98-7, at CM/ECF p. 15 at 98:21-99:25); caregiver logs, (Filing No. 98-7, at CM/ECF p. 11 at 81:25-83:4); or client care plans or service contracts (Filing No. 98-8, at CM/ECF p. 31 at 195:17-196:25), and they were unable to explain what efforts their employees used to find responsive information.  (Filing No. 98-8, at CM/ECF p. 6 at 81:15-82:17).  The defendants' electronic search consisted of looking for the words "Home Instead," and then deleting any documents found without retaining a copy or forwarding it to counsel

for this litigation.  (Filing No. 98-8, at CM/ECF pp. 11, 17, 22 at 107:1-21, 139:11-17, 157:9-158:1).

The defendants' effort to respond to discovery was inadequate.  The defendants will be ordered to make a concerted effort to further respond to discovery, provide any additional discovery responses located, and provide an affidavit outlining in detail the efforts made to comply with this order.

> Home Instead also seeks:
>
> a sworn affidavit outlining whether a litigation hold was put in place, the people to whom a litigation hold letter was sent, the directions for preservation, the sources identified for search, the terms used for the search, Defendants' continued efforts to ensure compliance, and any other information relevant to the scope and depth of the preservation or search for documents.

(Filing No. 97, at CM/ECF p. 4).  The court will order the defendants to provide the requested affidavit, not only to determine the extent of the defendants' search for production of responsive discovery, but to assess the defendants' degree of culpability in failing to preserve evidence for use in this litigation.

2)   <u>Manner of production</u>.

Home Instead asserts that as to the documents produced, the defendants provided "one large PDF that contains no metadata, no indication of parent-child document relationship, and no indication as to the beginning and end of each document."  (Filing No. 98, at CM/ECF p. 7).

> The parties' Rule 26(f) Report states:
>
> Documents maintained in electronic form in a party's ordinary course of business will be produced in electronic form. Where reasonably feasible, such documents shall be produced as searchable TIFF images with load

> files (that indicate the beginning and ending of each document and preserve the parent-child relationship) to allow the images to be loaded into a document production database.
>
> . . .
>
> Documents that are not maintained in electronic form in a party's ordinary course of business and that are not scanned into electronic form prior to the date of production may be produced in the same manner in which they are maintained (e.g., hard copies).

Filing No. 63, at CM/ECF p. 26-27. In addition to the parties' agreement, under Rule 34(b)(2)(e) of the Federal Rules of Civil Procedure:

> (i)     A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;
>
> (ii)    If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

Fed. R. Civ. P. 34(b)(2)(e)(i-ii).

Based on Michelle and David Florance's deposition testimony, the defendants located electronic documents and rather than produce them in an electronic format as required under their agreement with Home Instead and the federal rules, they printed the documents, scanned them, and created a single PDF for delivery. As to those documents that may have existed in their business in paper format, they failed to organize and label them as required under the Federal Rules. The Plaintiff's motion to compel the defendants to produce their discovery responses in a manner which complies with the Federal Rules, and the parties' agreement, which was incorporated by reference into the court's progression order, (Filing No. 16, ¶ 12), will be granted.

3)    <u>Specific Interrogatories</u>.

The plaintiff seeks an order compelling an answer to Interrogatory 5 served on Friend, Interrogatory 6 served on Michelle Florance, and Interrogatory 7 served on David Florance.  Each of these interrogatories states:  "Identify all clients serviced by Home Care of the Palm Beaches and the date they began receiving services."  (Filing No. 98-3, at CM/ECF p. 7-8, Interrogatory No. 5; Filing No. 98-2, at CM/ECF p. 8, Interrogatory No. 6; Filing No. 76-1, at CM/ECF p. 8, Interrogatory No. 7).  In response to each of these interrogatories, the defendants responded that "[s]ince no dates were specified in the interrogatory, the information provided is based on current information." The answers then lists 31 clients and the dates service began.  The defendants explain "No date range was specified and since Home Care of the Palm Beaches did not exist until approximately mid-September 2012, the information provided was the then current client information." (Filing No. 105, at CM/ECF p. 3).

The plaintiff seeks an order requiring the defendants to supplement their interrogatories.  Plaintiff asserts "Home Instead's interrogatories clearly and unambiguously seek identification of all clients serviced by Home Care of the Palm Beaches, not clients as of a date certain.  The d/b/a Home Care of the Palm Beaches has only been operating since October 2012; as such, the interrogatories have an implied date range."  (Filing No. 98, at CM/ECF p. 20).

The plaintiff is correct.  Particularly with a business that has operated for less than a year, the interrogatory need not state a date range.  "All clients" means every client, not just those being served as of the date the interrogatories were answered.  The defendants will be ordered to fully respond.  The defendants were also asked to further identify whether each client serviced by Home Care of the Palm Beaches, as listed in the previous interrogatories, was ever a client of Friend's former Home Instead Senior Care franchised business.  When the defendants provide full and complete responses identifying all

clients served by Home Care of the Palm Beaches, they shall also supplement this follow up interrogatory.

Interrogatory 7 served on Friend asked for the identity of "all individuals who have worked for Home Care of the Palm Beaches, either as employees or independent contractors of Friend of a Friend, Inc. or otherwise, from 2012 to present," (Filing No. 98-3, at CM/ECF p. 9). As written, Interrogatory 8 served on Friend states: "As to each person identified in Interrogatory No. 8," identify whether the individuals listed ever worked for the Former Franchised Business (Friend of a Friend, Inc.'s former Home Instead Senior Care franchised business). Interrogatory 8 has a clear typographical error; specifically, it should refer to Interrogatory 7 and not interrogatory 8. Friend provided no responsive information because the "interrogatory refers to itself and therefore does not identify any person about whom the specified information is sought." (Filing No. 98-3, at CM/ECF p. 10). And it continued to withhold responsive information despite the plaintiff's explanation of the typographical error and its repeated explanation that interrogatory 8 was actually referring to Interrogatory 7.

Before resorting to the court for resolution of their discovery disputes, the parties were required to discuss the issues in good faith and attempt to resolve them without court intervention. There is no good faith argument supporting Friend's continued refusal to respond to Interrogatory 8 based on a clear typographical error.

    4)    <u>Specific Requests for Production</u>.

    a.    Requests 29 and 30.

The defendants object to Requests 29 and 30 as vague, overbroad, unduly burdensome, irrelevant and not likely to lead to the discovery of relevant information, and seeking documents produced in response to other requests. The requests state as follows:

**Request No. 29**: All documents related to or regarding the initial franchise agreement for franchise no. 176, the initial franchise agreement for franchise no. 285, the Renewal Agreements, the Second Renewal Agreements, negotiations regarding the terms of any of the franchise agreements, the operation the Unauthorized Franchised Business, operation of Palm Beaches, and/or use of Home Instead's Licensed Marks, Confidential Information, System, and/or operational support services after August 2, 2012.

**Request No. 30**: All non-privileged documents including, without limitation, any notes, memoranda, calendars, or diaries written by any of Defendants concerning, regarding, or related to the initial franchise agreement for franchise no. 176, the initial franchise agreement for franchise no. 285, the Renewal Agreements, the Second Renewal Agreements, negotiations regarding the terms of any of the franchise agreements, the operation the Unauthorized Franchised Business, operation of Palm Beaches, and/or use of Homestead's Licensed Marks, Confidential Information, System, and/or operational support services after August 2, 2012.

(Filing No. 75-10, at CM/ECF p. 10).

The defendants' objections do not explain why they consider Requests 29 and 30 vague. Although in some contexts the terms "related to" or "regarding" can be vague, having considered the requests above in the totality, the court finds the requests are not ambiguous. When read as a whole, Requests 29 and 30 sufficiently defined the documents Plaintiff are seeking. And certainly, to the extent any ambiguity remains, those issues could have been resolved through good faith discussions to resolve this discovery dispute.

The defendants claim the requests are overbroad and unduly burdensome because responding would "require Defendants to compile several thousand pages of documents." (Filing No. 75-10, at CM/ECF pp. 10-11). However, before making this statement, the defendants made no effort to respond to the requests: They did nothing to truly assess the amount of work needed or the number of documents responsive to the requests. (Filing

No. 98-8, at CM/ECF p. 27, 178:24-180:25).   At the time he was deposed, David Florance had "no idea" how many pages of responsive documents existed.  Although his affidavit in response to this motion to compel states "Plaintiff's request for documents relating to the 'operation of the Unauthorized Franchised Business' in Request 29 and 30 would include every business document we possess," (Filing No. 106-1, at CM/ECF p. 4, ¶ 12), this statement is an after-acquired excuse for Defendants' predetermined refusal to respond to discovery.

Moreover, the statement is facially incorrect.  The term "Unauthorized Franchised Business" is defined in Plaintiff's in Request No. 17 as "the operation of Defendant Friend of a Friend, Inc.'s business under the name Home Instead Senior Care after August 2, 2012."  (Filing No. 75-10, at CM/ECF p. 6).  By referring to the Unauthorized Franchised Business, Plaintiff is not requesting "every business document" the defendants possess.

The defendants' relevancy objections will also be overruled.  This case rests on the interpretation of franchise agreements and the associated renewal agreements, and to the extent those documents are ambiguous, the parties' negotiations and discussions may serve to clarify and define the intended meaning of the contract terms.  The remedies being sought by the plaintiff, monetary and injunctive relief, arise from defendants' alleged misuse of Plaintiff's property and services following the termination of the parties' franchise agreement.  As such, documents which discuss, refer, or relate to "the operation the Unauthorized Franchised Business, operation of Palm Beaches, and/or use of Home Instead's Licensed Marks, Confidential Information, System, and/or operational support services after August 2, 2012" are clearly relevant.

Finally, the defendants may be arguing that they can refuse to respond to a request by simply stating the responsive documents have likely been provided in answer to other

10

requests.  While it is true that relevant documents can be responsive to several production requests, if a responding party intends to cross-reference its document production, it must specifically refer to the request for which the documents were already produced.  A blanket statement that the responsive documents "would likely already be produced by other requests," (Filing No. 75-10, at CM/ECF pp. 10-11), neither raises a valid discovery objection, nor provides the moving party or the court with any ability to determine if the responding party has fully answered the request.

The defendants' objections to Requests 29 and 30 will be overruled.

b.      Requests 37, 38, and 66.

The defendants object to Requests 37, 38, and 66 as irrelevant and not likely to lead to the discovery of relevant information, vague, overly broad, and unduly burdensome, and as to Request 37 and 66, invading the privacy and confidentiality of defendants' clients (Request 37), and its employees (Request 66).  The requests state:

> **Request No. 37**: For each client identified in response to Interrogatory No. 6 of Home Instead, Inc.'s First Set of Interrogatories to Defendant Friend of a Friend, Inc., please provide a complete copy of any and all client files associated with that client.

> **Request No. 38**: For each employee identified in response to Interrogatory No. 8 of Home Instead, Inc.'s First Set of Interrogatories to Defendant Friend of a Friend, Inc., please provide a complete copy of any and all employee files associated with that employee.

> **Request No. 66**: Documentation of all training provided to caregivers who provided services on behalf of the Former Franchised Business from 2010 to the expiration of Friend of a Friend's Home Instead Senior Care franchise agreements.

(Filing No. 75-10, at CM/ECF pp. 12-13, 20).

11

The defendants claim the term "client file" as used in Request 37 "is not defined and its meaning is unclear." (Filing No. 75-10, at CM/ECF p. 12). In response to this motion to compel, David Florance submitted an affidavit which states:

> Defendants do not and never have maintained a "file folder" containing all documents relating to a particular client. In the context of our business, we do not know what is meant by a "client file" since we do not maintain anything like that.

(Filing No. 106-1, at CM/ECF p. 4). The depositions of Michelle and David Florance belie this statement. Michelle Florance testified that she periodically reviews and after seven years shreds the company's "client files" (Filing No. 98-7, at CM/ECF p. 12 at 85:17-21); explaining the client files contain the clients' name, address, contact information, billing information, service contracts, and in some cases, billing invoices. (Filing No. 98-7, at CM/ECF pp. 13-14 at 89:5-22, 91:10-22, 93: 3-25). David Florance also referenced the client files in response to questioning. (Filing No. 98-8, at CM/ECF p. 33 at 203:6-17). Friend client files do exist: And the defendants know what they are. David Florance's conflicting affidavit statements cannot be used to undermine the clear deposition testimony. Defendants' claim that Request 37 is vague lacks merit.

The defendants claim responding to Request 37 would be unduly burdensome, explaining "documents that may be related to individual clients are voluminous (tens of thousands of pages - more if the request relates to all clients Defendants have ever served)." (Filing No. 106-1, at CM/ECF p. 4). By referring back to Friend's response to Interrogatory 6, Request 37 seeks the client files for "all clients serviced by Home Care of the Palm Beaches" that were at any time clients of Friend's former Home Instead Senior Care Franchised business. (Filing No. 98-3, at CM/ECF p. 8). Plaintiff is not requesting client files for all clients Defendants have ever served. And the depositions of Defendants David and Michelle Florance indicate they made no effort to determine the actual number and volume of files needed to respond to any discovery request.

12

Defendants' objection that Request 37 is unduly burdensome and overbroad will be overruled.

As to Requests 38 and 66, the defendants do not explain how the requests are vague, and they appear clear to the court.   The defendants have also failed to explain why responding to the requests would be burdensome due to the breadth of information requested.   Defendants' objections stating Requests 38 and 66 are vague, overly broad and unduly burdensome will be overruled.

The defendants object to responding to Requests 37, 38, and 66 on the basis of relevancy.  The requests seek information to support Plaintiff's claim that the defendants violated the terms of the franchise agreement by failing to return materials to Home Instead and competing with it.  Defendants' response to Requests 38 and 66 could also reveal whether the defendants used Home Instead's materials to conduct employee training even after the Home Instead/Friend franchise agreement expired.   Requests 37, 38, and 66 seek information that is relevant or could lead to the discovery of relevant information.

The defendants claim they cannot answer Requests 37 and 66 because disclosing the information sought would violate the confidentiality of clients and employees. Request 37 demands production of a complete copy of the client's files for those clients serviced by Home Care of the Palm Beaches and formerly serviced by Friend as a Home Instead franchise.   Request 66 demands "[d]ocumentation of all training provided to caregivers who provided services on behalf of the Former Franchised Business Business from 2010 to the expiration of Friend of a Friend's Home Instead Senior Care franchise agreements."  (Filing No. 75-10, at CM/ECF p. 20).

13

Home Instead and Friend provide non-medical companionship and domestic care services.  Thus, the client files are not medical records subject to a physician/patient privilege.  And while those records may contain private information, the court is convinced that the level of privacy at issue is sufficiently safeguarded by the protective order already in place.  The employee training records demanded by Request 66 are even less likely to contain truly confidential and private information, and they are likewise sufficiently shielded by the protective order.  Defendants' objection to Requests 37 and 66 based on asserted privacy and confidentiality concerns will be overruled.

The court finds that Defendants' objections to Requests 37, 38, and 66 lack merit. The defendant will be ordered to fully respond to these requests.

c.      Request 36.

The defendants object to Request 36 as vague, overly broad, and unduly burdensome.  Request 36 seeks production of "[a]ll documents referred to or relied upon by any of the Defendants to answer any of the First Sets of Interrogatories to Defendants served contemporaneously with these requests."  (Filing No. 75-10, at CM/ECF p. 12).

The defendants claim the "term "relied upon" is not defined and its meaning is unclear."  (Filing No. 75-10, at CM/ECF p. 12).  Based on its common sense meaning, as used in Request 36, the documents the defendants "relied upon" would include all documents they actually depended on or trusted to provide the information needed for completely and thoroughly responding to the plaintiff's interrogatories.  As such, the request is not overly broad and producing the documents would not be unduly burdensome.  The defendants' objections to Request 36 will be overruled.

      d.     Requests 51 and 52.

The defendants claim Requests 51 and 52 seek irrelevant information.  Requests 51 and 52 demand copies of care plans, service contracts, and payment invoices for all clients who received services from "the Former Franchised Business from January 2011 to the expiration of Friend of a Friend's Home Instead Senior Care franchise agreements." (Filing No. 75-10, at CM/ECF p. 16).  Under the terms of the franchise agreement:

> Franchisee must immediately deliver to Franchisor all Operations Manuals, software licensed by Franchisor, records, files, instructions, correspondence, all materials related to operating the Franchised Business, including, without limitation, agreements, invoices, and any and all other materials relating to the operation of the Franchised Business in Franchisee's possession or control and all copies (all of which are acknowledged to be Franchisor's property), and must not retain any copy or record of any of the foregoing, [with some exceptions].

(Filing No. 4-1, at CM/ECF p. 35).  Requests 51 and 52 are directed at determining the extent to which the defendants complied with this term of the franchise agreement.  The responsive documents are relevant and could lead to the discovery of relevant information.

      e.     Requests 32 and 33.

Requests 32 and 33 demand the 2012 state and federal tax returns for David and Michelle Florance.  (Filing No. 75-10, at CM/ECF p. 11).  Plaintiff claims it is entitled to review the returns and determine if the defendants are profiting from using Plaintiff's trademarked materials and from competing with Home Instead in violation of the expired franchise agreement.  The defendants claim the personal tax returns are irrelevant because recovery under the Lanham Act is limited to profits "reaped by the unfair competition," which does not include income from other sources.  (Filing No. 105, at CM/ECF p. 5).

Tax returns are not absolutely privileged from civil discovery, but a heightened showing of relevance and necessity" is required before discovery will be permitted. Flores v. Tyson Foods, Inc., 2013 WL 1091044 at *5 (D. Neb. Mar. 15, 2013). This court applies a two-part test is assessing whether this showing has been met: The court first determines if the moving party has established that the tax returns are relevant to the parties' dispute. If relevancy is shown, the responding parties must produce the returns unless they show there is no compelling need for production of the returns; that is, the relevant information within the returns "is readily obtainable from another source." Id.

As to each of the defendants, Plaintiff claims they violated the Home Instead/Friend franchise agreement by competing against Home Instead after the franchise expired, and they did so by misappropriating Plaintiff's trade secrets for their own use. If the plaintiff prevails, it is entitled to recover the income and profits gained by the defendants in violation of the franchise and through the use of Plaintiff's resources. 15 U.S.C. § 117(a)(1). The defendants' tax returns would include information relevant to Plaintiff's claim for monetary recovery.

Although Friend's 2012 tax return, W-2s, and 1099s reveal its income sources, those documents do not reveal the income sources of David and Michelle Florance who are also named as defendants and are guarantors under the parties' expired agreement. David and Michelle Florance claim the Friend tax information fully discloses any income they personally received from operating a non-medical, companion care business. But in light of testimony of David and Michelle Florance, Home Instead is not willing to accept that statement at face value.

The testimony of record indicates David and Michelle Florance have not been wholly forthcoming and honest during the discovery process, and they have destroyed, discarded, and distributed relevant information. (Filing No. 98-7, at CM/ECF pp. 18-19

at 108:24–109:15; Filing No. 98-8, at CM/ECF pp. 11, 36 at 107:1-108:10; 108:22-109:3; 214:9–215:14, 216:9-20).   Under such circumstances, David and Michelle Florance cannot be relied upon to disclose their income through sources other than production of income tax records.

The court will therefore order David and Michelle Florance to produce the portions of their tax return(s) reflecting all income they received along with copies of any documents supporting those income disclosures.   These records will be subject to the court's protective order.  If upon review, the documentation provided (e.g. W2's, 1099's, etc.) does not explain the total income reported in the return, upon motion of the plaintiff, the court will order David and Michelle Florance to produce their entire 2012 tax return(s), including all files and supporting documentation.

5)   <u>Unauthorized Franchised Business</u>.

The defendants have objected to Home Instead's use of the term "Unauthorized Franchised Business" in its discovery requests, claiming the term mischaracterizes the defendants' conduct.   The term, as defined in Request 17, means "the operation of Defendant Friend of a Friend, Inc.'s business under the name Home Instead Senior Care after August 2, 2012."  (Filing No. 75-10, at CM/ECF p. 6).  The defendants claim they will be prejudiced if, when referring to discovery responses at trial, the term "Unauthorized Franchised Business" is used before a jury.

"Unauthorized Franchised Business" is sufficiently defined to permit the defendants to understand Plaintiff's discovery requests and respond.   The potential prejudice of using the phrase at trial is not a discovery objection, but rather a matter to be addressed by motion in limine.   The defendants' objection to the term "Unauthorized Franchised Business" in Plaintiff's discovery will be overruled.

6)   Protective Order.

The defendants request an order prohibiting the plaintiff from serving any additional written discovery.  Since the defendants have not fully responded to the current discovery, neither the plaintiff nor the court can determine if follow up discovery will be needed.  Therefore, the defendants' request for a protective order will be denied at this time.

For the reasons discussed above,

IT IS ORDERED:

1)   The plaintiff's motion to restrict, (Filing No. 96), is granted.   The documents within filing 98 shall remain filed as a restricted access documents.

2)   The parties' stipulation, (Filing No. 107), is granted, and Plaintiff's request for production of QuickBooks accounting data is withdrawn.

3)   The defendants' objection to the plaintiff's motion to compel, (Filing No. 104), is denied, the plaintiff's motion to compel, (Filing No. 97), is granted, and on or before November 22, 2013:

   a.   Defendants shall provide a statement, signed under oath, which lists in detail all documents responsive to Plaintiff's discovery, and/or listed as documents to be returned to Home Instead under the terms of the expired franchise agreement, which were in the defendants' possession, custody, or control as of August 1, 2012, but which were not produced because the defendants destroyed, deleted, sold, shredded, or otherwise discarded them, and as to all such documents, provide a description of how and when Friend lost control or possession of the information.

   b.   Defendants shall further search for discovery responsive to the plaintiff's discovery, produce any additional discovery located, and explain by written

affidavit as to each separate document request, the efforts made to locate responsive documents.

c.     The defendants shall provide a sworn affidavit outlining whether a litigation hold was put in place, the people to whom a litigation hold letter was sent, the directions for preservation, the sources identified for search, the terms used for the search, Defendants' continued efforts to ensure compliance, and any other information relevant to the scope and depth of the preservation or search for documents.

d.     As to all documents responsive to Plaintiff's discovery and maintained by defendants in a paper format, defendants shall produce the documents as they are kept in the usual course of business, and  shall organize and label them to correspond to the plaintiff's discovery requests.

e.      As to all documents responsive to Plaintiff's discovery and maintained by defendants in an electronic format, such documents will be produced in electronic form and where reasonably feasible, shall be produced as searchable TIFF images with load files (that indicate the beginning and ending of each document and preserve the parent-child relationship) to allow the images to be loaded into a document production database.

f.     As to Interrogatory 5 served on Friend, Interrogatory 6 served on Michelle Florance, and Interrogatory 7 served on David Florance, the defendants shall supplement their answers to provide full and complete responses identifying all clients served by Home Care of the Palm Beaches, and shall supplement all interrogatory responses dependent on the defendants' responses to Interrogatory 5 served on Friend, Interrogatory 6 served on Michelle Florance, and Interrogatory 7 served on David Florance.

g.     Defendants shall fully answer Interrogatory 8 served on Friend which is hereby corrected to state:  "As to each person identified in Interrogatory No. 7, identify whether that individual ever worked for· the Former Franchised Business, either· as an employee or· independent contractor of Friend of a Friend, Inc. or otherwise."

h.     Defendants' objections to Requests for Production 29, 30, 36-38, 51-52, and 66 are overruled, and defendants shall fully respond to these requests.

i.     Defendants' objections to Requests for Production 32 and 33 are overruled and as to their 2012 income tax return(s), David and Michelle Florance shall produce the portions of their tax return(s) reflecting all income they received along with copies of any documents supporting those income disclosures.

j. The defendants' objection to the term "Unauthorized Franchised Business" in Plaintiff's discovery is overruled, and the defendants' shall fully respond to any discovery requests using this term.

k. The defendants' request for a protective order to prohibit further written discovery by the plaintiff is denied.

4) The parties' joint motion to extend the discovery deadlines, (Filing No. 117), is granted as follows:

a. The deadline for Home Instead and Defendants to identify expert(s) and to disclose expert(s) report(s) is extended to November 22, 2013.

b. The deadline for Home Instead and Defendants to identify rebuttal expert(s) and disclose its rebuttal expert(s) report(s) is extended to December 6, 2013.

c. The deposition deadline is extended to December 13, 2013.

November 8, 2013.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge
